**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THE JOINT COMMISSION ON ACCREDITATION OF HEALTHCARE ORGANIZATIONS, <br><br> Plaintiff, <br><br> v. <br><br> FORTIS BUSINESS MEDIA LLC, d/b/a BLR – BUSINESS & LEGAL RESOURCES, <br><br> Defendant. | No. 16 C 04724 <br><br> Judge John J. Tharp, Jr. |

## ORDER

For the reasons stated more fully below, defendant Fortis Business Media LLC's motion to dismiss [15] is denied. A status hearing is set for Monday, September 25, 2017 at 9:00 a.m.

## STATEMENT

Fortis has moved to dismiss this copyright infringement action for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court therefore takes as true all well-pleaded facts alleged in the complaint and draws all reasonable inferences in favor of the Joint Commission, the non-moving party. *See Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2013).

The plaintiff, The Joint Commission of Accreditation of Healthcare Organizations, is a not-for-profit corporation that provides accreditation and certification services for more than 20,000 health care organizations and programs in the United States. Compl. ¶ 3. The Joint Commission is the sole member of, and fully controls, non-party Joint Commission Resources, Inc. ("JCR"), which has "the exclusive right to carry out the Joint Commission's education, publication, and accreditation preparation functions" as they relate to improving patient safety and health care quality. *Id.* ¶¶ 4-5. The Joint Commission has also granted JCR the right to "copy, sell, distribute, and publish" materials that the Joint Commission owns. *Id.* ¶ 4. The Joint Commission licenses its copyrighted works to third parties, who pay fees in order to reproduce those works, prepare derivative works, distribute copies of the works, publicly perform the works, and publicly display the works. *Id.* ¶ 6.

In 2009, the Joint Commission authored and published a document titled *2009 Comprehensive Accreditation Manual for Hospitals, Update 2* ("2009 CAMH Update 2"). *Id.* ¶ 9; 2009 CAMH Update 2, ECF No. 1-11. This 688-page publication is organized into two sections. *Id.* ¶ 10. The first is titled "Requirements for Accreditation" and addresses discrete issues in how a health care organization can comply with the Joint Commission's requirements;

for example, one chapter in this section is titled "Infection Prevention and Control" and explains how health care organizations can develop and maintain an infection prevention and control program. *Id.* The second section is titled "Policies, Procedures, and Other Information" and explains the processes that the Joint Commission uses to asses an organization's compliance with its requirements as well as the different accreditation outcomes that will result based on how the organization performed. *Id.* ¶ 11. The Joint Commission alleges that the 2009 CAMH Update 2 "in its individual chapters and as a whole, expresses and reflects The Joint Commission's expertise, experience, and judgment on its accreditation services." *Id.* ¶ 13. The U.S. Copyright Office issued Copyright Registration Number TX 8-150-444[1] for the 2009 CAMH Update 2 to the Joint Commission on June 3, 2015. *Id.* ¶ 15; 2009 CAMH Update 2 Registration, ECF No. 1-1. The Joint Commission has licensed all parts of the text and artwork in the 2009 CAMH Update 2 to third parties in exchange for a fee, but defendant Fortis has never had any license or authorization from the Joint Commission to reproduce, distribute, publicly perform or display, or prepare derivative works based on the 2009 CAMH Update 2. *Id.* ¶ 16.

The Joint Commission alleges in its complaint that Fortis—and another defendant that Joint Commission has since voluntarily dismissed from the case, *see* ECF No. 12—has reproduced and distributed a series of publications that include "text that has been copied from, is substantially similar to, and/or is derivative of" the 2009 CAMH Update 2. *Id.* ¶¶ 17-19. The Joint Commission names, by example and without limitation, six allegedly infringing publications, copies of which it also attaches to its complaint: *Chapter Leader's Guide to Provision of Care* (2012 ed.), ECF No. 26-1; *Chapter Leader's Guide to Infection Control* (2012 ed.), ECF No. 1-3; *Chapter Leader's Guide to Information Management* (2012 ed.), ECF No. 1-4; *Chapter Leader's Guide to Life Safety*, Second Edition (2013 ed.), ECF No. 1-5; *Chapter Leader's Guide to Human Resources* (2012 ed.), ECF No. 1-6; and *Verify and Comply: Credentialing and Medical Staff Standards Crosswalk*, Sixth Edition (2014 ed.), ECF Nos. 1-7, 1-8. *See* Compl. ¶ 18. Fortis has distributed four of these works continuously since 2012, and has distributed the *Life Safety* publication since 2013 and *Verify and Comply* since 2014. Compl. ¶ 20. The Joint Commission alleges that Fortis' infringement has been willful, and that Fortis had access to the 2009 CAMH Update 2—and knew about the Joint Commission's copyright in it—before engaging in infringement. *Id.* ¶ 25.

By way of background, the Joint Commission initially accused Fortis and several other defendants of infringing the 2009 CAMH Update 2, as well as a 2011 publication, in a case it filed in 2014. *See Joint Comm'n on Accreditation of Healthcare Orgs. v. Greeley Co., Inc.*, No. 14 C 10225 (N.D. Ill.). This Court dismissed the allegations in that case regarding the 2009 CAMH Update 2 because the Joint Commission did not file an application to register the copyright in that work until after it had instituted that lawsuit. *See* Second Am. Compl. in No. 14 C 10225; *Joint Comm'n on Accreditation of Healthcare Orgs. v. Greeley Co., Inc.*, No. 14 C 10225, 2016 WL 1450051, at *3 (N.D. Ill. Apr. 13, 2016). The Joint Commission then filed this suit in April 2016—after the registration of the asserted copyright—accusing Fortis and a former defendant of copyright infringement in violation of the Copyright Act of 1976, 17 U.S.C. §§ 101

---

[1] The Joint Commission lists a slightly different number—TX 8-150-144—in its complaint, but here the Court uses the number appearing on the registration that Joint Commission attached as an exhibit to its complaint.

*et seq*. The plaintiff's earlier suit is still pending as to its allegations regarding the 2011 work. Fortis has filed a motion to dismiss that suit as well, and this Court is issuing a contemporaneous order in that case that is consistent with the rationale and result with respect to Fortis's motion in this case.

To state a claim for copyright infringement, a plaintiff must plausibly allege that: (1) the plaintiff owns a valid copyright; and (2) the defendant copied "constituent elements of the work that are original." *Feist Publications, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Fortis' overarching argument is that the Joint Commission has not sufficiently pled the second element of its infringement claim: that the defendant copied original elements of the plaintiff's work. A plaintiff can establish this second element through direct evidence, such as an admission of copying, or may do so indirectly "by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters v. West*, 692 F.3d 629, 633 (7th Cir. 2012).

**I. Derivative Work**

Before addressing substantial similarity, however, the Court must address a threshold issue raised for the first time in Fortis's Reply brief. Fortis maintains that the Joint Commission's complaint relies on a copyright covering only a derivative work. The Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works," and includes within this definition a work "consisting of editorial revisions, annotations, elaborations, or other modifications which, as a whole, represent an original work of authorship." 17 U.S.C. § 101; *see also Sissom v. Snow*, 626 Fed. App'x 163, 166 (7th Cir. 2015); *Gracen v. Bradford Exchange*, 698 F.2d 300 (7th Cir. 1983). The Copyright Act "specifically grants the author of a derivative work copyright protection in the incremental original expression he contributes as long as the derivative work does not infringe the underlying work." *Schrock v. Learning Curve Intern., Inc.*, 586 F.3d 513, 518 (7th Cir. 2009) (citing 17 U.S.C. § 103(a), (b); *Pickett v. Prince*, 207 F.3d 402, 405 (7th Cir. 2000); *Lee v. A.R.T. Co.*, 125 F.3d 580, 582 (7th Cir. 1997)). But the copyright in that derivative work "extends only to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work." § 103(b); *see also Schrock*, 586 F.3d at 518. Fortis argues that the copyright registration therefore only protects new material that the Joint Commission added as "updates" in the 2009 CAMH Update 2, and does not protect preexisting material that the 2009 CAMH Update 2 carried forward from prior versions of the manual. Reply at 2. Fortis asserts that the Joint Commission therefore needed to show a substantial similarity between Fortis's works and the **new material** in the 2009 CAMH Update 2 that is covered by the derivative copyright—rather than such a similarity between Fortis's works and **any material that appears** in the 2009 CAMH Update 2—and that it failed to do so. *Id.* Because this issue is potentially dispositive, this Court directed the Joint Commission to file a sur-reply addressing only the derivative works argument, and allowed Fortis to respond to that sur-reply.

The Joint Commission does not appear to dispute that the letter of the copyright registrations it asserts in its complaint in this case and in the related case concerning the 2011 CAMH publication extends only to derivative works. *See* Sur-reply at 1. Instead, the Joint

3

Commission points to a doctrine some courts have followed in cases where the entity who owns the copyright in the derivative work also owns the copyright in the underlying, pre-existing work. In situations where the copyright in that pre-existing work is not registered,[2] these courts have allowed the copyright owner to use that derivative copyright registration to bring an infringement action covering both the new *and* the pre-existing parts of the derivative work. *See* 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 7.16[B][5][c] (Matthew Bender ed., 2015) (explaining rule and collecting cases); *see also, e.g.*, *Xoom, Inc. v. Imageline, Inc.*, 323 F.3d 279, 284 (4th Cir. 2003), *abrogated on other grounds* (in case where underlying works were not formally registered, adopting view that the registration of a derivative or compilation work "is sufficient to allow an infringement claim based on the copying of material, whether newly added or contained in the underlying work"); *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F.3d 739, 747 (2d Cir. 1998) (where the plaintiff did not offer proof of registration of the pre-existing work, finding that because the plaintiff "is the owner of the copyright of both the derivative and pre-existing work, the registration certificate relating to the derivative work in this circumstance will suffice to permit it to maintain an action for infringement based on defendants' infringement of the pre-existing work").

The Joint Commission argues in this case and in the 2014 case that this Court should apply the above rule to find that the plaintiff "need not limit its comparison of what Fortis copied to only the material added by the two Updates," but that instead "Fortis' copying can be evaluated based on a comparison of its infringing publications to the Updates in their entireties, which include the underlying CAMHs." Sur-reply at 2. Fortis notes in its brief that the Seventh Circuit does not seem to have addressed the applicability of this doctrine, *see* Resp. to Sur-reply at 1 n.1. and objects that courts have only applied it when the copyright in the underlying, original work has not been registered. Resp. to Sur-reply at 1-2.

As an initial matter, it bears noting that in advancing this objection Fortis has not clearly identified which copyright registration, for which pre-existing work, makes the rule explained above inapplicable. Fortis points to a registration covering a work titled "2009 CAMH Update 1," but presumably this registration would prompt the same derivative work argument from Fortis as the one it raises now. *See* Resp. to Sur-reply at 2 n.2. Fortis also identifies registration number TX0007528407 as one covering "CAMH 2009," but an online search of that number in

---

[2] As this Court has previously noted, there is a distinction between holding a copyright in a work and having the ability to file a lawsuit for infringement of that copyright. *See Joint Comm'n*, 2016 WL 1450051, at *3. "[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). The Seventh Circuit has specified that compliance with the registration requirement in § 411(a) "is not a condition of copyright protection but is a prerequisite to suing for infringement." *Brooks-Ngwenya v. Indianapolis Pub. Sch.*, 564 F.3d 804, 806 (7th Cir. 2009); *see also Reed Elsevier v. Muchnick*, 559 U.S. 154, 166-169 (2010) (section 411(a)'s registration requirement "does not restrict a federal court's subject-matter jurisdiction," but rather is a "precondition to filing suit," an element of a copyright infringement claim).

the U.S. Copyright Office database[3] reveals that it actually refers to a work titled "2011 Comprehensive Accreditation Manual for Hospital, Update 2." Still, the copyright registration covering the 2009 CAMH Update 2, which the Joint Commission attached to the complaint, does identify a previous registration number under the heading "Limitation of copyright claim." *See* 2009 CAMH Update 2 Registration. An online search of that number, TX0007299876, indicates that it refers to the Joint Commission's registration for a work titled "Comprehensive Accreditation Manual for Hospitals" created in 2008.

In any event, Fortis's argument is an odd one for an alleged infringer to make: claiming non-infringement of a derivative copyright that is unenforceable because the work on which the derivative copyright is based is also copyrighted. What possible reason would there be for such a distinction? Why would having two copyrights (primary and derivative) provide *less* copyright protection than having only one? Even in cases where that underlying work has a copyright registration, the rationale that the Fourth Circuit articulated in *Christopher Phelps & Assocs. v. Galloway*—where the underlying work was unregistered—applies:

> [T]he copyright in a derivative work extends only to the new elements contributed by the author and does not extend to the underlying work. *See* 17 U.S.C. § 103(b). That provision assures that the author of a derivative work does not acquire ownership over constituent material that is already in the public domain or is owned by someone else. But when the author of the derivative work also has a copyright on the underlying work, there is no need to protect the public domain or the author of the underlying work, as the entire work is that of the single author.

492 F.3d 532, 539 (4th Cir. 2007). Here, there is nothing to indicate that barring the Joint Commission from proceeding on the basis of the 2009 CAMH Update 2 registration would run counter to some need to protect the public domain. In addition, it is the Joint Commission which is the author of the underlying work, and the outcome Fortis seeks would obviously do little to protect the Joint Commission in that capacity.

Finally, even if this Court were to side with Fortis in its derivative registration argument, it would still grant the Joint Commission leave to amend so that it could explicitly refer to any underlying registrations. *See* Fed. R. Civ. Pro. 15(a)(2) ("The court should freely give leave when justice so requires."). Little would be gained from this outcome except for further delays to a set of disputes whose roots in this Court date back to 2014.

The Joint Commission's infringement claims are therefore not limited only to material that appears for the first time in the 2009 CAMH Update 2.

---

[3] *See* UNITED STATES COPYRIGHT OFFICE, PUBLIC CATALOG, http://cocatalog.loc.gov/cgi-bin/Pwebrecon.cgi?DB=local&PAGE=First (search by Registration Number); *see also Pugh v. Tribune Co.*, 521 F.3d 686, 691 n.2 (7th Cir. 2008) ("We may take judicial notice of documents in the public record . . . without converting a motion to dismiss into a motion for summary judgment.")

## II. Substantial Similarity Arguments

In light of the above conclusion, this Court will consider all of the examples of alleged copying that the Joint Commission cites in its complaint and brief, and not just those examples based on new material appearing for the first time in the 2009 CAMH Update 2. With those examples, the Joint Commission has adequately alleged that Fortis copied constituent elements of its work that are original.

The Seventh Circuit has explained that in the absence of direct evidence of copying—for example, an admission of copying—a plaintiff may prove copying indirectly "by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters*, 692 F.3d at 633. While "access does not entail copying," copying necessarily entails access. *Ty, Inc. v. GMA Accessories, Inc.*, 132 F.3d 1167, 11670 (7th Cir. 1997). "[E]vidence that two works are very similar can suggest that the alleged infringer had access to the original." *Peters*, 692 F.3d at 634.

Fortis does not raise an access challenge in its motion to dismiss, and in any event, the Joint Commission has sufficiently alleged that Fortis had access to the 2009 CAMH Update 2. In a chart attached to its complaint, the Joint Commission provides more than 100 alleged examples of infringement by listing the relevant page numbers in the 2009 CAMH Update 2 next to the relevant page numbers of the allegedly infringing Fortis publications. *See* 2009 Chart, ECF No. 1-9. With its response brief, the Joint Commission also filed a chart providing side-by-side comparisons of the language used in some of those cited examples.[4] Resp. Chart, ECF No. 25-3. This chart, together with an examination of certain cited pages in the actual copies of the 2009 CAMH Update 2 and the Fortis publications that the Joint Commission attached to its complaint, confirm that there are instances of the same paragraphs appearing verbatim, or nearly verbatim in the plaintiff's and defendant's works. Illustrative is the following comparison of pages HR-9 and HR-10 of its 2009 CAMH Update 2 and page 130 of Fortis' *Chapter Leader's Guide to Human Resources*, which include the language reproduced below.

---

[4] "[F]acts alleged by a plaintiff in a brief in opposition to a motion to dismiss 'may be considered when evaluating the sufficiency of a complaint so long as they are consistent of the allegations in the complaint.'" *Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015) (citing *Gutierrez v. Peters*, 111 F.3d 1364, 1367 n. 2 (7th Cir. 1997); *Albiero v. City of Kankakee*, 122 F.3d 417, 419 (7th Cir. 1997)).

| From 2009 CAMH Update 2 at HR-9–HR-10: | From *Chapter Leader's Guide to Human Resources*: |
|---|---|
| Elements of Performance for HR.01.07.01<br>1. The hospital evaluates staff based on performance expectations that reflect their job responsibilities.<br>2. The hospital evaluates staff performance once every 3 years, or more frequently as required by hospital policy or in accordance with law and regulation. This evaluation is documented.<br>5. When a licensed independent practitioner brings a nonemployee individual into the hospital to provide care, treatment, and services, the hospital reviews the individual's competencies and performance at the same frequency as individuals employed by the hospital. | HR .01.07.01: The hospital evaluates staff performance.<br>1. The hospital evaluates staff based on performance expectation that reflect their job responsibilities.<br>2. The hospital evaluated staff performance once every three years, or more frequently as required by hospital policy or in accordance with law and regulation. This evaluation is documented.<br>3. When a licensed independent practitioner brings a nonemployee individual into the hospital to provide care, treatment, and services, the hospital reviews the individual's competencies and performance at the same frequency as individuals employed by the hospital. |

Although additional text appears elsewhere on these pages, and the parties' works use somewhat different formats—Fortis places the language into a chart—the fact remains that these paragraphs appear in both works, very nearly word-for-word. The Joint Commission has plausibly alleged Fortis' access to the Joint Commission's work.

But the access issue "is independent of the question whether an alleged infringer breached his duty not to copy another's work." *See Peters*, 692 F.3d at 635. For that, this Court must consider whether the Joint Commission has adequately alleged that Fortis's works are substantially similar to its own. This test is an objective one, and concerns "'whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protectible expression by taking material of substance and value.'" *Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011 (7th Cir. 2005) (quoting *Atari, Inc. v. N. Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982), *superseded by statute on other grounds*). The leading treatise on copyright law distinguishes between two potential forms of substantial similarity. One such form is "comprehensive nonliteral similarity," which includes paraphrasing and refers to cases where "the fundamental essence or structure of one work is duplicated in another" but there is no verbatim copying. NIMMER, *supra*, at § 13.03[A][1]. The category of "fragmented literal similarity," meanwhile, includes similarity that is nearly word for word, but may occur where "the fundamental substance, or skeleton or overall scheme, of the plaintiff's work has not been copied." *Id.* at § 13.03[A][2].

The Joint Commission argues that Fortis has committed both types of infringement. This Court will begin its focus on literal similarity, however, for which there are both quantitative and qualitative aspects:

> No easy rule of thumb can be stated as to the quantum of fragmented literal similarity permitted without crossing the line of substantial similarity. The question in each case is whether the similarity relates to matter that constitutes a substantial portion of plaintiff's work—not whether such material constitutes a substantial portion of defendant's work. Thus, for example, the fact that the sampled material is played throughout defendants' song

7

cannot establish liability, if that snippet constitutes an insubstantial portion of plaintiff's composition. The quantitative relation of the similar material to the total material contained in plaintiff's work is certainly of importance. However, even if the similar material is quantitatively small, if it is qualitatively important, the trier of fact may properly find substantial similarity. . . . In general under such circumstances, the defendant may not claim immunity on the grounds that the infringement "is such a little one." If, however, the similarity is only as to nonessential matters, then a finding of no substantial similarity should result. That scenario could unfold to the extent that defendant copied a small amount of plaintiff's text or of entries from plaintiff's compilation, or briefly sampled plaintiff's sound recording, or to the extent that the subject reproduction is fleeting and out-of-focus.

*Id.* at § 13.03[A][2][a].

The Joint Commission has plausibly alleged substantial similarity here by pointing to dozens of pages from its 2009 CAMH Update 2 that it alleges Fortis infringed. Many of the cited pages from Fortis's *Handbooks* include sentences and even whole paragraphs that are identical to, nearly word-for-word duplicates of, or close paraphrases of language that appears in the 2009 CAMH Update 2. The quantity of alleged examples here far exceeds the two allegedly copied paragraphs that this Court previously found to be insufficient in the 2014 case as to the 2011 Joint Commission work. See *Joint Comm'n*, 2016 WL 1450051, at *6-8. And as this Court noted in that earlier decision, the Joint Commission need not set forth every instance of duplication between its own work and Fortis' publications, but instead need only plead sufficient facts to make their allegation of substantial similarity plausible. *See id.* at *8. The Joint Commission's use of a sampling technique to support that inference of plausibility is permissible. *See* NIMMER § 12.10[B][3] ("[T]he court may render its decision based on representative samples of defendant's episodic work, rather than being required to 'look at all 150 episodes' in reaching its determination of substantial similarity." (citing *Zella v. E.W. Scripps Co.*, 529 F. Supp. 2d 1124, 1132 (C.D. Cal. 2007))).

Fortis argues that the pages the Joint Commission identifies in its own works are not substantially similar to the cited pages in Fortis' works because Fortis has added content— including, for example, quotes from well-known individuals, as well as additional text—that does not appear in the Joint Commission's publication, and because Fortis's publication uses different formatting. Mot. at 7-10. In its brief and in an exhibit, Fortis provides side-by-side comparisons of certain cited pages of the works in full, and argues that "a visual comparison of the pages themselves confirms that they are not similar, let alone substantially similar." Mot. at 8-9; *see also* Fortis Comparisons, ECF No. 15-1.

This argument misses the mark in two ways. First, the Court is ruling on a motion to dismiss; the question here is not whether the plaintiff has proven substantial similarity but whether it has alleged sufficient facts to make such a claim plausible. That Fortis can identify differences between the works is a matter for consideration by a finder of fact at a later juncture.

8

And second, a defendant cannot escape liability simply by adding more material to his infringing work "if in other respects, similarity as to a substantial element of plaintiff's work can be shown." *See* николай § 13.03[B][1][A]; *see also, Nash v. CBS, Inc.*, 899 F.2d 1537, 1541 (7th Cir. 1990) ("'[N]o plagiarist can excuse the wrong by showing how much of his work he did not pirate.'" (quoting *Sheldon v. Metro–Goldwyn Pictures Corp.*, 81 F.2d 49, 56 (2d Cir. 1936) (L. Hand, J.)).

This Court also rejects Fortis' argument that any similarities between the publications rest on non-protectable elements of the 2009 CAMH Update 2 that this Court must "extract" before conducting a substantial similarity analysis. It is true that "[i]t is a foundation of copyright law that only the form of an author's expression is protectable, not the facts or ideas being expressed." *Sissom*, 626 Fed. App'x at 166 (citing *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 547 (1985)). And the Seventh Circuit has cautioned that courts must "heed the principle that, despite what the ordinary observer might see, the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." *Incredible Techs.*, 400 F.3d at 1011. As a result, any unprotected or unprotectable elements of the plaintiff's work—even those that "are most significant and most clearly similar"—are not taken into account in the substantial similarity analysis. *See id.* at 1012. Fortis contends that information about the Joint Commission's accreditation and certification standards are not protectable, and that once these elements are extracted from the analysis, hardly any similarities between the 2009 CAMH Update 2 and the accused works remain at all. Mot. at 11.

But the Joint Commission has adequately alleged substantial similarity between Fortis' publications and ***protectable*** elements of its own works. As the Joint Commission correctly notes, to be eligible for copyright protection, "the requisite level of creativity is extremely low; even a slight amount will suffice. The vast majority of works make the grade quite easily, as they possess some creative spark, 'no matter how crude, humble or obvious' it might be." *Feist*, 499 U.S. at 345 (quoting николай at § 1.08[C][1]). The standards and other measures of performance that the Joint Commission sets out in its 2009 CAMH Update 2 pass this low creativity bar.

The analogy that the Joint Commission draws to the Seventh Circuit's decision in a case involving a taxonomy of dental procedures is well-taken. *See* Resp. at 9-10; *Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997). In *American Dental*, the appellate court found that the taxonomy was copyrightable and that classification itself was "a creative endeavor," explaining:

> Dental procedures could be classified by complexity, or by the tools necessary to perform them, or by the parts of the mouth involved, or by the anesthesia employed, or in any of a dozen different ways. The Code's descriptions don't "merge with the facts" any more than a scientific description of butterfly attributes is part of a butterfly. *Cf. Nash v. CBS, Inc.*, 899 F.2d 1537 (7th Cir.1990) (discussing the fact-expression dichotomy). There can be multiple, and equally original, biographies of the same person's life, and multiple original taxonomies of a field of knowledge. Creativity marks the expression even after the fundamental scheme

9

has been devised. This is clear enough for the long description of each procedure in the ADA's Code. The long description is part of the copyrighted work, and original long descriptions make the work as a whole copyrightable. But we think that even the short description and the number [assigned to a given procedure] are original works of authorship.

*Id.* at 979. Here, the Joint Commission alleges that the 2009 CAMH Update 2 explains how health care organizations' are evaluated for compliance with the Joint Commission's own requirements and explains various outcomes that may result based on an organization's performance. The Joint Commission asserts that it goes through a process in creating, testing, and approving this and other manuals. Resp. at 10. This is sufficient to allege the requisite amount of creativity. Fortis has also not made a convincing case that the Joint Commission is basing its suit on unprotectable facts. Facts are generally not protectable largely because they depend on discovery rather than creation; "The first person to find and report a particular fact has not created the fact; he or she has merely discovered its existence." *Feist*, 499 U.S. at 347. The 2009 CAMH Update 2 discusses and categorizes standards that the Joint Commission developed, not facts that it discovered.

Based on the foregoing, the Court concludes that The Joint Commission has plausibly alleged copyright infringement in its complaint, and Fortis' motion to dismiss is therefore denied.

Date: September 6, 2017

/s/ John J. Tharp, Jr.
John J. Tharp, Jr.
United States District Judge